**NOT FOR PUBLICATION**

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANKLIN U.S. RISING DIVIDENDS FUND; *et al.*, | Civil Action No. 2:13-05805 (JLL) (JAD) |
| Plaintiffs, | |
| v. | **OPINION** |
| AMERICAN INTERNATIONAL GROUP, INC., | |
| Defendant. | |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court upon motion by defendant, American International Group, Inc., ("AIG" or "Defendant") to transfer venue to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a) (the "Motion to Transfer"). (ECF No. 3).[1] Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument. Upon consideration of the parties' submissions, and for the reasons stated below, Defendant's Motion to Transfer is **GRANTED**. This case shall be transferred to the United States District Court for the Southern District of New York.

---

[1] Defendant's Motion to Transfer, (ECF No. 3), also sought to stay the response to the Complaint, which this Court granted on November 22, 2013, by way of Letter Order. (See ECF No. 12).

## I. <u>INTRODUCTION.</u>

There can be no doubt that this matter is venued here, in New Jersey, because of an unrelated case decided by the Court of Appeals for the Second Circuit.  It is therefore necessary to initially address that case, and its impact on Plaintiffs' litigation strategy, particularly their choice of venue.  On June 21, 2011, the United States District Court for the Southern District of New York (hereinafter the "SDNY") in <u>In re IndyMac Mortgage-Backed Sec. Litig.</u>, denied motions to intervene, reasoning that the repose period had expired and could not be tolled under existing precedent or extended by operation of Rule 15(c).  <u>See</u> <u>In re IndyMac Mortgage-Backed Sec. Litig.</u>, 718 F. Supp. 2d 495 (S.D.N.Y. 2010), (<u>citing</u> <u>American Pipe & Const. Co. v. Utah</u>, 414 U.S. 538 94 S. Ct. 756 38 L. Ed. 2d 713 (1974)).  Three of the five putative plaintiffs in that case subsequently filed a notice of appeal as proposed intervenors to the United States Court of Appeals for the Second Circuit on July 20, 2011.  <u>Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.</u>, 721 F.3d 95, 103-04 (2d Cir. 2013).  Notably, Counsel for the Plaintiffs in this case filed an Amicus Curiae brief in support of Intervenors–Appellants, W.R. Huff Asset Management Co.  <u>Id.</u> at 100.

On June 27, 2013, prior to the filing of this current action, the Second Circuit issued its decision in <u>IndyMac</u> and found that the <u>American Pipe</u> holding does not toll the statute of repose for class members' claims under the Exchange Act, (the "<u>IndyMac</u> decision").[2]  During the pendency of the appeal in the <u>IndyMac</u> matter, but before the Second Circuit issued its Opinion, Plaintiffs chose to opt out of the class in a previous action involving identical facts to this matter, in December of 2011.  The five-year statute of repose on their claims under the Exchange Act had

---

[2] Citing <u>Police & Fire Retirement System of Detroit v. IndyMac MBS, Inc.</u>, 721 F.3d 95 (2d Cir. 2013).

ostensibly been tolled pursuant to judicial authority following the Supreme Court's holding in American Pipe but the Second Circuit had not yet rendered a decision in IndyMac, as Plaintiffs' Attorneys were aware.  414 U.S. 538, 540, 94 S. Ct. 756, 760, 38 L. Ed. 2d 713 (1974).  (Pls. Br., ECF No. 11, at 8-9).   The Second Circuit's IndyMac decision effectively closed the door in the SDNY in connection with their claims in this case.  Accordingly, Plaintiffs filed here, at least in part, to find a more favorable forum because the Third Circuit has not directly addressed this specific tolling issue.  Defendant now moves to transfer this matter to the SDNY, but Plaintiffs argue that a resulting injustice will occur if this case is transferred because it will subsequently be time-barred in the SDNY, and therefore Plaintiffs will be the only investors injured by the Defendant and left without any recovery or remedy.  (Pls. Br., ECF No. 11 at 15).

The Court in Patton Boggs LLP v. Chevron Corp., recognized that while transferring that case to the SDNY could "sound the death knell for [Plaintiff's] claims … neither the public nor the private interests [of Jumara][3] require the Court to consider this issue."  No. 12-901 (ES), 2012 WL 6568526 *2 (D.N.J. Dec. 14, 2012).  This Court is constrained to follow the holding in Patton Boggs LLP and, upon careful consideration, cannot allow the IndyMac decision, and its consequences on Plaintiffs' chances in the SDNY, to supplant a proper analysis of the Jumara factors.  The Jumara analysis reveals that this case should be transferred.

## II. BACKGROUND AND PROCEDURAL HISTORY.

### a.  The Parties

The Plaintiffs in this case are seven mutual funds with investors who are pension and retirement funds, educational, research and charitable endowments, and other institutional and individual

---

[3] Citation omitted.

3

investors. (Decl., ECF No. 11-1 at ¶ 4).[4]  Plaintiffs were formerly members of a putative class of investors seeking to recover damages for losses sustained as a result of, among other improprieties, an alleged securities fraud stemming from illegal kickbacks to insurance brokers. (Pls. Br., ECF No. 11, at 2).  That class action (hereinafter the "Class Action") was pending in the SDNY, and ultimately settled. (Id.).  Plaintiffs subsequently exercised their right to opt out of the class in 2011 and brought the current action. (Id.).

Plaintiffs are entities associated with Franklin Resources, Inc., an investment management firm that, together with its subsidiaries, operates under the name Franklin Templeton Investments. (Decl., ECF No. 5 at Ex. 5). Franklin Resources, Inc. is incorporated in Delaware, and headquartered in California. (Id.).  The Defendant is American International Group, Inc., a corporation incorporated in Delaware with its principal place of business in New York. (Id. at Ex. 2, ¶ 44).  Although not a party in this action, Franklin Advisory Services, LLC ("FAS") is an investment adviser registered with the SEC, with its principal place of business in Fort Lee, New Jersey. (Pls. Br., ECF No. 11, at 9).  As mutual funds, each Plaintiff's structural composition reflects management by an investment adviser, such as FAS, which has full discretion and authority to make investment decisions on behalf of that fund. (Id.).  That discretion and authority includes researching, reviewing, analyzing and determining which securities to purchase, and in

---

[4] The Plaintiffs are Franklin U.S. Rising Dividends Fund ("U.S. Rising Dividends Fund"), Franklin Managed Trust-Franklin Rising Dividends ("FMT Rising Dividends"), Franklin Value Investors Trust-Franklin Large Cap Value Fund ("Large Cap Value Fund"), Franklin Templeton Variable Insurance Products Trust-Franklin Rising Dividends Securities Fund ("FTVIP Rising Dividends"), Templeton Funds-Templeton World Fund, Franklin Templeton Variable Insurance products Trust-Franklin Large Cap Growth Securities Fund, and Franklin Templeton Investment Funds-Franklin US Equity Fund, (collectively "Plaintiffs").

4

what amounts.  (Id.).  FAS is designated as the investment adviser with full investment discretion
and authority for only four[5] of the seven Plaintiffs in this action.  (Id.).[6]

### b.  The Class Action and Settlement

Plaintiffs purchased AIG stock from October 28, 1999 through April 1, 2005.  (Compl.
ECF No. 1, ¶ 1).  On October 14, 2004, the Attorney General for the State of New York filed a
complaint against the brokerage firm Marsh & McLennan Companies, Inc. ("Marsh") contending
Marsh unlawfully rigged bids and demanding "contingent commission" payments for insurance
companies to steer business towards them.  (Id. ¶ 130-134).  On or about October 15, 2004, an
AIG shareholder filed a class action complaint (the "Class Action Complaint") in the SDNY
against AIG based upon the Attorney General's findings.  (Def. Br., ECF No 3-1, at 4).  The Class
Action Complaint, in which Plaintiffs and others joined, alleged, in short, that AIG and others had
engaged in a "massive accounting and securities fraud" that forced the restatement of nearly five
years of earnings as a result.  (Decl., ECF No. 5 at Ex. 2, ¶ 18).

Judge Deborah A. Batts ("Judge Batts") presided over the Class Action in the SDNY for
approximately the last five years.  (Def. Br., ECF No 3-1, at 8).  The docket sheet from the Class
Action[7] yields a total of 210 pages with over 700 docketed entries.  (See Decl., ECF No. 5-8).  In
July of 2010, the parties to the Class Action reached a settlement (the "Class Action Settlement"
or the "Settlement"), which was finalized in November of 2010 and approved by Judge Batts on

---

[5] "FAS is, and at all relevant times was, the investment adviser with full investment discretion and authority for Plaintiffs, FMT Rising Dividends, U.S. Rising Dividends Fund, FTVIP Rising Dividends, and Large Cap Value (collectively the 'New Jersey-Managed Funds')".  (Pls. Br., ECF No. 11, at 9).
[6] (Hereinafter the "New Jersey-Managed Funds")
[7] Among other items, the docket sheet includes motions, document requests, and references to depositions conducted of both fact witnesses and expert witnesses.  (Def. Br., ECF No. 3-1, at 6).

February 2, 2012. (Decl., ECF No. 5, at Ex. 4, ¶ 150-152). Plaintiffs opted out of the Class Action

Settlement with AIG on December 23, 2011. (Def. Br., ECF No. 3-1, at 9). The Court then entered

an Order excluding them from the class, and Plaintiffs forfeited any right to participate in the

Settlement. (Pls. Br., ECF No. 11, at 13-14).


    c. **The Current Action**

       Plaintiffs filed the current action in the District of New Jersey on September 30, 2013,

asserting violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").

(Compl. ECF No. 1, ¶¶ 815-826). Plaintiffs' choice of venue is based on Plaintiffs' use of FAS as

their financial adviser, as FAS maintains its principal place of business is in New Jersey, although

none of the Plaintiffs themselves, however, are actually organized under the laws of New Jersey

or have their principal places of business there. (Pls. Br., ECF No. 11, at 8-9).[8] Plaintiffs allege

that FAS, as an advisor, is considered "personnel necessary to actually conduct their business

operations," as FAS[9] managers and analysts received and reviewed AIG's public filings with the

SEC in connection with their decisions to purchase AIG stock for the New Jersey-Managed Funds.

(Decl., ECF No. 11-1, at ¶¶ 8-11, 20). Plaintiffs opine that such filings were published and

disseminated by AIG in New Jersey. (Id.). On October 31, 2013, Defendant moved to transfer

this case to the SDNY and to stay its response to the Complaint. (ECF No. 3). On November 22,

2013 this Court granted Defendant an extension to file its Answer, pending the decision rendered

on this Motion to Transfer. (ECF No. 12).

---

[8] Furthermore, only four of the Plaintiffs used FAS as their advisor.
[9] Plaintiffs state that it was FAS who made the decisions for the New Jersey-Managed Funds to purchase AIG securities in reliance on AIG's apparently false and misleading statements. However, FAS lacks Article III standing to sue directly. (Pls. Br., ECF No. 11, pg. 12, at n. 5).

## III. STANDARD OF REVIEW.

The decision whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010). Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a case to any venue where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "The purpose of § 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998).

The three factors a court must consider when determining whether to transfer a matter pursuant to § 1404(a) are: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Id. In addition to these statutory factors, the Third Circuit sets forth public and private interests that should also be considered when deciding whether to transfer an action:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Johnson v. RiteAid, No. 10-2012, 2011 WL 2580375, at *2-3 (D.N.J. June 28, 2011) (citing

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)).

 

Thus, the Court must engage in a two part analysis to determine whether a motion to transfer venue should be granted. As a threshold matter, the Court must decide whether the proposed transferee district has proper jurisdiction and venue, such that the case could have been brought in that district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). The Court must then conduct an "individualized, case-by-case consideration of convenience and fairness" regarding which forum is most appropriate to consider the case. Id. "There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted)).

 

The Court is also mindful of the Court of Appeals' admonition against considering the merits of a case during the pendency of a transfer application. McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3d Cir. 1970) ("Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.")

## IV. DISCUSSION.

### a. Plaintiffs Could Have Filed This Action in the Southern District of New York.

As a preliminary consideration, the Defendant contends that Plaintiffs could have filed this action in the United States District Court for the Southern District of New York, as required by 28 U.S.C. § 1404(a), permitting the transfer of an action to any district "where it may have been brought". (Def. Br., ECF No. 3-1, at 11).[10]  Plaintiffs do not challenge this point.  Indeed, the Court finds that venue would be appropriate in the SDNY pursuant to 29 U.S.C. § 1132(e)(2). Accordingly, the Court now turns to whether the § 1404(a) factors, as well as the relevant public and private interest factors, weigh in favor of such a transfer.

### b. On Balance, the § 1404(a) Factors and *Jumara* Factors Weigh in Favor of Transfer

#### i. Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive .

Prior to the filing of this action, the Class Action was litigated for many years and ultimately settled in the SDNY.  The Plaintiffs chose to opt out of the Settlement.[11]  Thus, it would appear that a trial would be easier, more expeditious, and less expensive if adjudicated therein. The Class Action was pending in the SDNY for almost five years prior to the filing of this case. Over the course of that time, Judge Batts[12] has presumably become thoroughly familiar with the

---

[10] "SDNY is a district where this action might have been brought-there is subject matter jurisdiction over the claims, personal jurisdiction over AIG, and proper venue in the SDNY." (Def. Br., ECF No. 3-1, at 11).

[11] (See Decl., ECF No. 5-8).

[12] The Court notes that this action will almost certainly be assigned to Judge Batts should the matter be transferred to the SDNY. Like the District of New Jersey, the SDNY employs a screening process to ensure that nearly identical actions are heard by the same judge. For instance, if Plaintiffs had filed this action in the SDNY, they would have had to complete and submit that District's form "Civil Cover Sheet". The Civil Cover sheet asks: "Has this action, case or proceeding, or one essentially the same been previously filed in the SDNY at any time?" and requires the litigant to identify the judge assigned to the previous action. United States Court for the Southern District of New York Website, Civil Cover Sheet Form, http://www.nysd.uscourts.gov/file/forms/civil-cover-sheet (last visited April 10, 2014). Plaintiffs would, therefore, have had to identify the previous SDNY Class Action on that Civil Cover Sheet and reveal

allegations and facts of the case and accordingly, is well positioned to conduct pretrial proceedings in an expeditious manner for claims that are almost identical to those at issue in that previous action. See American Cyanamid Co. v. Eli Lilly & Co., 903 F.Supp. 781, 787 (D.N.J.1995).

Plaintiffs do not argue that the litigation presented in this case involves separate factual and legal issues to be determined by this Court, but rather that Judge Batts has never determined the merits of the Plaintiffs' claims as the Class Action resulted in settlement. (Pls. Br., ECF No. 11, at 37). To promote the just and efficient conduct of this litigation however, this Court must consider Judge Batts' work during pre-trial proceedings. For instance, all 23 former defendants filed motions to dismiss in the Class Action, and the documents filed in connection with those motions totaled almost four thousand pages (including briefs, declarations, and exhibits). (Def. Br., ECF No. 3-1, at 6). The motions were denied and the parties engaged in extensive discovery. (Id.). Plaintiffs to the Class Action served numerous document requests on Defendant and on many non-parties. (Id.). The parties conducted 97 depositions of fact and expert witnesses, several of which lasted for multiple days. The parties also engaged in extensive motion practice concerning the issue of class certification. (Id.).

Substantial judicial resources are consumed in pre-trial proceedings and discovery, not only when a court makes an adjudication on the merits. Judge Batts presided over the Class Action for approximately the last five years, overseeing extensive discovery and considering the strengths and weaknesses of the Parties' claims. (Def. Br., ECF No. 3-1, at 8). See, e.g., Job Haines, 936 F. Supp. at 233–34 (finding that where judge in proposed transferee district was "intimately

---

Judge Batts' involvement in that case. The Court has no reason to believe that the SDNY's assignment process works any differently with regard to transferred matters.

familiar" with the case at hand, it would be a "gross waste of judicial resources" not to transfer the case).

Plaintiffs admittedly opted out of the class in reliance on the prior tolling law within the Second Circuit after years of pre-trial proceedings in the SDNY. (Pls. Br., ECF No. 11, at 3). For the past nine years however, every other securities action against AIG related to the same allegations has been filed in New York. (Def. Br. ECF No. 3-1 at 11). So this Court must consider the following question: why did the Plaintiffs choose to bring this case to the District of New Jersey, essentially starting their case over? The Plaintiffs have plainly asked this Court to adjudicate the same claims that resulted in a settlement after five years in the SDNY, without the benefit of those five years. The Court reluctantly concludes that Plaintiffs' choice of venue in this case, while understandable, is a type of forum shopping.

While Plaintiffs' hesitation to file this case in the SDNY following the Second Circuit's IndyMac decision is understandable, the Court cannot condone forum shopping at the expense of judicial resources, efficiency, and in disregard of the Jumara factors. (Def. Br. ECF No. 3-1 at 2).[13]  Plaintiffs could have timely asserted their claims in the SDNY, but instead, faced with the IndyMac decision, brought their claims to New Jersey, a district which has very little, if any, connection to this dispute. Plaintiffs who opt out of class action settlements bear risks relating to their new action, including new judicial precedent that may be issued between the date of opting out and the date of filing the new action. This action is better suited in the same forum which produced the Class Action Settlement and carefully considered the same issues before this Court,

---

[13] Citing 55 F.3d 873, 879-80 (3d Cir. 1995).

regardless of Plaintiffs' view that the resulting settlement amount was unjust.[14] This factor weighs in favor of a transfer.

### ii. **Whether the Claim Arose Elsewhere.**

The inquiry in determining this factor turns on "which forum contains the center of gravity of the dispute, its events, and transactions." Park Inn Int'l, L.L.C. v. Mody Enterprises, 105 F.Supp.2d 370, 377–78 (D.N.J.2000). Here, the cause of action centers on AIG's alleged scheme to defraud investors, including Plaintiffs. (Pls. Br. ECF No. 11, at 2). Plaintiffs argue that because their business is maintained by investing in, buying, and selling securities, and these decisions are made solely by their advisers in New Jersey, that New Jersey is the primary location where the claim arose. (Decl., ECF No. 11-1 at ¶ 19).[15] FAS, however, is not a party to this action, and its connection to New Jersey remains irrelevant to three of the seven Plaintiffs in this action, as they are not managed by FAS. (Pls. Br. ECF No. 11, at 10). Specifically, the following Plaintiffs are not managed by FAS: 1) Templeton Funds-Templeton World Fund; 2) Franklin Templeton Variable Insurance products Trust-Franklin Large Cap Growth Securities Fund; and 3) Franklin Templeton Investment Funds-Franklin US Equity Fund. (Id. at 9). Plaintiffs' argument that their claims arose in New Jersey because FAS, a non-party to this action, received and relied upon AIG's alleged misrepresentations in New Jersey, which affected some of the Plaintiffs, is not persuasive. Plaintiffs do not delineate what connection, if any, the claims of the three other

---

[14] Plaintiffs state that the Settlement amount would not provide sufficient recovery for their claims, stating "[u]nder the [S]ettlement's allocation formula, the net settlement distribution the [Plaintiffs] would have received based on Class counsel's estimated net recovery (after deduction of fees and expenses) of $0.38 per damaged share would have been less than $1.9 million (against $60 million in losses) on an aggregate basis". (Pls. Br., ECF No. 11, at 13).
[15] Plaintiffs admit that three of the funds in this action are managed in the Bahamas and California rather than New Jersey. (Pl. Br., ECF No. 11, pg. 10, n. 4).

Plaintiffs have to New Jersey.  Rather, Plaintiffs rely as a cohesive unit on FAS as their connection to New Jersey and as a basis to deny transfer.

Plaintiffs also argue that New York is not the "center of gravity" for this dispute, as AIG failed to engage in "localized wrongdoing". (Pls. Br. ECF No. 11, at 29).  Plaintiffs argue that the SDNY, therefore, has no greater connection to this fraud than any other district.  (Id.).  According to Plaintiffs, through publishing false and misleading press releases and false public filings with the SEC, AIG "lured" investors, like the Plaintiffs, to buy its stock at inflated prices. (Id. at 8). However, "when examining claims for misrepresentation on a motion to transfer venue, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.' " Branthover v. Goldenson, No. 10-7677, 2011 WL 6179552, at *3 (S.D.N.Y. Dec.12, 2011) (internal quotation omitted).  Additionally, courts have required that the events or omissions supporting a claim be "substantial," where events or omissions that might only have some tangential connection with the dispute in litigation are not enough. See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).  For example, in Metro. Life Ins. Co. v. Bank One, N.A., the Court held that in a securities fraud action, transfer to SDNY was proper where defendant's misrepresentations and omissions causing plaintiff's losses were made in New York, where their headquarters were located. See Metro. Life Ins. Co. v. Bank One, N.A., No. 03-1882 (SDW), No. 03-2784 (SDW), 2011 WL 4464026 (D.N.J. Sept. 25, 2012).  As AIG is located in New York, its alleged misrepresentations stemmed from New York.[16]   Thus, the better view is that AIG's misrepresentations and omissions causing

[16] Many courts have transferred claims to districts where the alleged misrepresentations were made, and not where the alleged misrepresentations were relied upon (either by advisers or otherwise) or received. See e.g., Frato v. Swing Staging, Inc., No. 10–5198, 2011 WL 3625064, at *4 (D.N.J. Aug.17, 2011) (rejecting argument that "[plaintiff's] Fraud/Misrepresentation Claims arose in New Jersey because [that is where] he relied on Defendants'[ ] alleged misrepresentations regarding the financial condition of Defendant;" finding claims arose in New York); Purcell

Plaintiffs' losses were made in New York, AIG's forum. The Court finds that the claims arose in, and the center of gravity of the Parties' dispute is, New York, and this factor weighs in favor of transfer.

### iii. **The Forum Preference of the Plaintiffs and the Defendant.**

The Plaintiffs argue that their choice of forum must be given great weight in a Section 1404(a) analysis. However, when the plaintiff has not chosen its home forum, then the plaintiff's choice of forum deserves less deference. See Lony v. E.I. Dupont de Nemours & Co., 886 F.2d 628, 633 (3d Cir.1989). See also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256, 102 S.Ct. 252, 70 L.Ed.2d 419 (1989); Ricoh Co. v. Honeywell, Inc., 817 F.Supp. 473, 480 (D.N.J.1993). Here, Plaintiffs have selected a foreign forum. Though they choose to file suit in New Jersey, none of the Plaintiffs reside in New Jersey.

Plaintiffs contend that, while none of them are headquartered in New Jersey, "the location of the investment adviser and middle-office provider for four of the seven Plaintiffs" is in New Jersey. (Pls. Br., ECF No. 11, at 3). The fact that some of the functions of the funds are conducted through an investment adviser located in New Jersey, does not render any of the Plaintiffs New Jersey entities for the purposes of this analysis. Ricoh, 817 F.Supp. at 481; American Tel. & Tel. Co. v. MCI Communications Corp., 736 F.Supp. 1294, 1306 (D.N.J.1990) (explaining that, even though a corporation "maintains a considerable presence in New Jersey, it is a New York corporation with a principal place of business in that state" and therefore it could not be "entitled to the greatly enhanced deference due to a plaintiff suing in its home state"). Further, while

---

Graham, Inc. v. National Bank of Detroit, No. 93 Civ. 8786, 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994) (transferring to district where defendant "allegedly made representations or failed to disclose information.").

Plaintiffs' decision to bring their case to New Jersey would ordinarily be a strong bulwark against transfer, here, none of the facts alleged in the Complaint appear to have any substantial New Jersey nexus, and such an attenuated connection to the chosen forum substantially undercuts the weight of this choice. See Andrews v. Norfolk S. Corp., No.07-2688(JLL), 2008 WL 687255 (D.N.J. Mar. 4, 2008). Accordingly, the Court affords less deference to Plaintiffs' choice of forum because none of the Plaintiffs are residents of New Jersey. See Fellner v. Phila. Toboggan Coasters, Inc., No. 05–1052, 2005 WL 2660351, at *4 (E.D.Pa. Oct. 18, 2005) ("[W]hen plaintiff brings suit in a district other than his home state, his venue choice is entitled to less deference.").

### iv. The Convenience of the Parties.

In considering the "convenience of the parties," district courts should focus on the relative physical and financial condition of the parties. See Jumara, 55 F.3d at 879. Neither party has proffered any significant argument showing a physical or financial burden to litigating in New Jersey. Plaintiffs argue that the Defendant has not met its burden of proving either financial inconvenience or "unique or unusual burden" if the action were litigated in New Jersey. (quoting Intellectual Ventures I LLC v. Altera Corp., 842 F. Supp 2d 744, 751 (D. Del. 2012)). (Pls. Br., ECF No. 11, at 32). While it is true that Defendant provides no evidence of a financial burden in litigating in New Jersey, Plaintiffs have not provided the Court with evidence of the like in litigating in New York.

The Defendant argues that because none of the Plaintiffs reside in either New Jersey or New York, both potential forums would be equally inconvenient for them. (Def. Br., ECF No. 3-1, at 24). Additionally, the Defendant argues that because the Defendant has its principal place of business in New York, the SDNY provides for a more convenient forum for the Defendant, and

thus, this factor weighs in favor of a transfer. (Id. at 24-25). The Court finds that Defendant's argument that both New Jersey and New York would be equally inconvenient for them applicable. Defendant has its principal place of business in New York, and the Plaintiffs only tie to New Jersey is through a financial adviser, FAS, which is not a party to this case. Accordingly, this factor therefore appears to weigh slightly more in favor of a transfer to the SDNY, but is of minor value given the proximity of the potential transferee forum.

### v. The Local Interest in Deciding Local Controversies at Home.

As this Court has already determined that New York is the center of gravity of the Parties' dispute, this Court finds, on balance, that New York has a stronger local interest in the outcome of this litigation. See Ricoh Co. v. Honeywell, Inc., 817 F.Supp. at 486; Mediterranean Golf, Inc. v. Hirsh, 783 F.Supp. 835, 849 (explaining that courts have a "local interest in having localized controversies decided at home") (quoting Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 640 (3d Cir.1989)). Since AIG is located in New York, the conduct at issue allegedly occurred in that district, and Judge Batts has already invested substantial time and energy into this matter, the SDNY has a particular local interest in deciding this dispute. See LG Electronics, Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 592 (D.N.J. 2001) (finding that the local interest in deciding disputes weighed in favor of transfer to the Northern District of California where the "center of gravity" of the lawsuit was California and where that district had familiarity with the matter). Yang v. Odom, 409 F. Supp. 2d 599, 609 (D.N.J. 2006). Therefore, this factor weighs in favor of transfer.

16

### vi. **The Convenience of Witnesses.**

When taking into account the convenience of the witnesses in this case, this factor is of neutral value. Defendant's primary argument regarding witness convenience is that since at least 64 of the 73 depositions in the Class Action took place in New York, it would be more convenient for witnesses to stay in New York. (Def. Br., ECF No. 3-1, at 25). Plaintiffs contend that Defendant's argument on witness convenience is frivolous and not enough to favor their motion to transfer. (Pls. Opp., ECF No. 11, at 34).

According to Jumara, the convenience of witnesses should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. Further, this Court relies on Days Inns Worldwide, Inc. v. Ram Lodging, LLC, where the Court found that neither party was able to offer evidence suggesting that any witness would be unavailable for trial in either forum as opposed to merely being inconvenienced by the distance. No. 09-2275 (SDW), 2010 WL 1540926 (D.N.J. Apr. 14, 2010). From there, the Court held that convenience of the witnesses was a neutral factor that did not weigh in either party's favor. Id. This Court agrees with that analysis.

Neither Plaintiffs nor the Defendant has offered evidence that any witnesses would be unavailable to appear in either New Jersey or New York, as opposed to merely being inconvenienced. Although the Defendant claims that because a majority of the depositions were taken in New York, it has not established that any of the witnesses would be unavailable for trial in New Jersey. (Def. Br., ECF No. 3-1, at 25). Likewise, Plaintiffs have not established that any of their witnesses would be unavailable for trial in New York. Indeed the Court doubts that either party could make a legitimate argument on this point given the proximity of the forums in question.

Therefore, to the extent that the convenience of witnesses is determined under <u>Jumara</u>, this factor is neutral and does not weigh in favor of either party. 55 F.3d at 879.

### vii. <u>The Location of Books and Records.</u>

Under <u>Jumara</u>, a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum." 55 F.3d at 879; <u>See also</u> <u>Trilegiant Loyalty Solutions, Inc. v. Maritz</u>, No. 04-360 (JJF), 2005 WL 441077 (D. Del. Feb. 15, 2005) (holding that the location of books and records do not necessarily weigh in favor of a transfer where the defendant contends that documents could be produced in either fora). Defendant contends that many of the original documents related to this action are in the possession of the Defendant and its attorneys in New York. (Def. Br., ECF No. 3-1, at 25). However, Defendant also states that although the original documents are in New York, they recognize that copies of many relevant documents could be readily available electronically. (<u>Id.</u>). Additionally, Plaintiffs make no mention in their opposition to this specific factor. Ultimately, the parties have not submitted any evidence that the transportation of documents to either forum would be unduly burdensome or expensive. Similarly, given the close proximity of the SDNY and the District of New Jersey, the Court cannot conceivably find that documents would be unattainable for transport to either venue. Therefore, the factor regarding the location of books and records is neutral.

### viii. <u>The Public Policies of the Fora.</u>

Defendant contends that New York has a strong public policy interest in determining the action because investigations into Defendant's misconduct were New York focused. (Def. Br., ECF No. 3-1, at 20). Plaintiffs argues this factor is neutral. (Pls. Br., ECF No. 11, at 38). This

factor is more suitable to weigh in favor of the Defendant but not for the reasons offered by the Defendant. The Court finds that because not even one of the seven Plaintiffs is a resident of New Jersey, public policy favors judicial efficiency in this case.

FAS, although from New Jersey and deemed to be in charge of maintaining investments for some of the Plaintiffs, is not a party to this suit; therefore, the only connection Plaintiffs have to New Jersey is that some, but not all, of them hired an outside investment adviser who resides here. (Def. Rep., ECF No. 14, at 1). In addition, the claims against Defendant harp back to New York-based agencies such as the New York State Attorney General's Office, the New York Department of Insurance, the Unites States' Attorney General's Office of SDNY, the New York Regional Office of the SEC, all of which were likely encountered in pre-trial proceedings by Judge Batts. (Def. Br., ECF No. 3-1, at 20). Public policy within the District of New Jersey clearly disfavors a waste of judicial resources, which is implicated in this case when Plaintiffs ask this Court to litigate class claims here, when a court in the SDNY already has experience with these same issues:   involving substantially the same transactions, occurrences, and issues[17] Considering the fact that the very same circumstances are the basis for the claims before this Court, favors transfer. Therefore, as a matter of public policy, this action is better situated in the SDNY.

### ix. The Familiarity of the Trial Judge with the Applicable State Law.

Defendant contends that although Plaintiffs do not assert any state law claims, this factor nevertheless also supports a transfer as the claims are based, in part, on the requirements of several New York statutes. (Def. Br., ECF No. 3-1, at 21). However, as this Court has already discussed

---

[17] See MP Vista, Inc. v. Motiva Enterprises LLC, 2008 WL 5411104 at *3 (D. Del. 2008).

Judge Batts' familiarity to the case and as Plaintiffs' claims are based in federal law, this factor is neutral.

### x. Relative Administrative Difficulty Resulting from Court Congestion.

The Court finds this action could be tried without undue administrative difficulties resulting from court congestion in either this District or the SDNY. Defendant states that as of June 30, 2013, the median time from filing to trial for a civil action in the SDNY was 26.6 months; in this District it was 37.2 months. (Def. Br., ECF No. 3-1, at 16). Alternatively, Plaintiffs submit a Declaration opining the median time from case filing to disposition which conflicts with Defendant's further states that only 5.0% of pending civil cases in this Court are more than 3 years old, as opposed to 25.7% in Southern District. (See Rolnick Decl., ECF No. 11 at Ex. F.).

This Court is guided by Eastman v. First Data Corp., stating that where "the parties have submitted conflicting data regarding comparative court congestion, and the Court finds that this factor does not tip the balance in either party's favor." No. 10-4860 WHW, 2011 WL 1327707 (D.N.J. Apr. 5, 2011). Further, the Court expressed that no matter how the statistics are tweaked, the reality is that New York and New Jersey are both busy districts, as is the case here. Id. Furthermore, "relative congestion of the respective courts' dockets is not a factor of great importance" on a motion to transfer. Id. (quoting Kisko v. Penn. Cent. Transp. Co., 408 F.Supp. 984 (M.D.Pa.1976). Therefore, this factor is of neutral weight.

**x. The Enforceability of the Judgment.**

Any judgment would be enforceable in either District. Both parties concede the enforceability factor is neutral and the Court finds the same.  (Pls. Br., ECF No. 11, at 38).

## V.  CONCLUSION.

Taking the foregoing findings into consideration, this Court concludes that on balance, the Jumara factors weigh in favor of transfer and the Defendant has therefore met its burden in demonstrating that a transfer is appropriate under 28 U.S.C. §1404(a).  For this reason, Defendant's Motion to Transfer, (ECF No. 3), is **GRANTED**, and this matter will be transferred to the United States District Court for the Southern District of New York.  The Order implementing this decision shall be stayed for twenty (20) days to accommodate any appeal to the District Court.

**SO ORDERED**

JOSEPH A. DICKSON, U.S.M.J.

cc:     Honorable Jose L. Linares, U.S.D.J.

21